UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD BRUNO,<br>    *Defendant*. | No. 3:16-cr-235 (JAM) |

**ORDER DENYING MOTION FOR SENTENCE REDUCTION**

Richard Bruno is a prisoner of the Federal Bureau of Prisons ("BOP"). Pursuant to 18 U.S.C. § 3582(c)(1)(A), he moves for a reduction of his prison sentence. For the reasons set forth below, I am not convinced that Bruno has established the extraordinary and compelling reasons required to justify a sentence reduction. Nor would the purposes of sentencing be served if he were to be released at this time. Accordingly, I will deny the motion.

BACKGROUND

On September 28, 2017, I sentenced Bruno to a term of 16 years of imprisonment following his guilty plea to a federal charge of production of child pornography.[1] Bruno was arrested while trying to meet with a person he thought was a 13-year-old girl and whom he intended to pay for sex.[2] This individual was actually an undercover detective, and Bruno was arrested at the meetup.[3] A subsequent search of his home revealed evidence that Bruno, who owned several low-income rental properties, was soliciting sex from his tenants and their

---

[1] Docs. #30, #47, #49.
[2] Doc. #36 at 4 (¶ 8), 10 (¶ 36).
[3] *Id*. at 8-9 (¶¶ 25-27), 27 (¶ 121).

1

children in exchange for reduced rental payments.[4] He filmed at least four sexual encounters he had with a minor, which formed the basis of his child pornography production charge.[5]

At sentencing I adopted the presentence report's Sentencing Guideline calculation of 210-262 months of imprisonment.[6] Bruno's charge of production of child pornography required by statute that I impose a sentence of at least 15 years of imprisonment. *See* 18 U.S.C. § 2251.

The sentence of 16 years of imprisonment (192 months) was well below the recommended Sentencing Guidelines range but one year above the statutory minimum sentence.[7] When I explained my reasons for choosing this sentence, I discussed my concerns about "how you could have engaged in this essentially depraved and perverted sex acts with minors," and also how "I am convinced on balance that you essentially used your power as a landlord to take advantage and to exploit people and to create opportunities that you could fulfill your sexual desires."[8]

In addition, I was concerned based on Bruno's own statements at sentencing that he had "very limited insight" into the harm he had caused as well as "how difficult it will be to change your patterns of thinking when you're back in society."[9] I told Bruno that his statements during the sentencing hearing "gave me additional concern that I did not have coming in to today's sentencing about your mental state."[10]

In deciding on an appropriate sentence, I also considered factors that weighed in Bruno's favor. I noted that he did not have criminal history, that he had been well employed, that at times

---

[4] *Id.* at 8 (¶ 23), 13-14 (¶¶ 44-51).
[5] *Id.* at 5 (¶¶ 9-13).
[6] Doc. #52 at 6.
[7] *Id.* at 72.
[8] *Id.* at 70.
[9] *Id.* at 71.
[10] *Ibid.*

2

he had been a good father (apart from the conduct at issue in the prosecution), and that he had accepted responsibility by pleading guilty.[11]

Overall, I concluded that I would "impose that prison term a bit more than the [statutory] minimum and mostly because of the concerns I have not only about just punishment but essentially the additional concerns I've gotten from listening to you today about whether you're going to go back and really be able to keep other people safe. I wish I didn't have to conclude that, but I do, in terms of your insight."[12]

Bruno has now filed a second motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), as well as an additional memorandum establishing that he has properly exhausted the required administrative procedures.[13] The government opposes the motion.[14] According to the BOP, Bruno has a projected release date of February 28, 2030.[15]

Bruno argues that he is "extremely invested" in participating in an intensive residential sex offender treatment program, but he does not currently qualify because his projected release date is in February 2030 and participants must typically be in the final three years of their incarceration.[16]

Bruno also alleges that his incarceration during the pandemic was much harsher than could have been anticipated at the time of sentencing.[17] Bruno was incarcerated at FCI Otisville where there were multiple covid outbreaks.[18] As a result, Bruno was subjected to frequent quarantines, limited recreation and access to phones and email, and no social visits.[19] His access

---

[11] *Ibid.*
[12] *Id.* at 72.
[13] Docs. #96, #102.
[14] *See* Doc. #100.
[15] *See* https://www.bop.gov/inmateloc/ (last accessed Nov. 25, 2024).
[16] Doc. #96 at 6-7.
[17] *Id.* at 14.
[18] *Id.* at 11.
[19] *Ibid.*

to self-directed sex offender programming also became extremely limited.[20] He experienced "additional stress" because his worsening health conditions placed him at risk of contracting covid at any time.[21] Bruno has also been diagnosed with hypertension, hyperlipidemia, obesity, and prediabetes.[22] And he contracted covid, although his infection was mostly asymptomatic.[23]

## DISCUSSION

I will first review the statutory and regulatory framework that governs motions under 18 U.S.C. § 3582(c)(1)(A). Then I will address how these factors apply to Bruno's case.

Federal law allows a court to grant a prisoner's motion for sentence reduction if there are "extraordinary and compelling reasons" to do so. 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States v. Brooker*, 976 F.3d 228, 231-34 (2d Cir. 2020).[24] Provided that a prisoner has satisfied the statute's exhaustion requirement, § 3582(c)(1)(A) establishes several criteria a court must consider before granting any motion for sentence reduction.

First, there must be no less than "extraordinary and compelling reasons" to warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[25] A court must also "consider[] the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Thus, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime,

---

[20] *Id.* at 11-12.
[21] *Id.* at 12.
[22] *Id.* at 12-13.
[23] *Id.* at 13.
[24] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.
[25] As an alternative to the existence of such "extraordinary and compelling reasons," section 3582(c)(1)(A) allows for motions to be filed by the BOP on behalf of prisoners who are at least 70 years old and have served at least 30 years in prison. 18 U.S.C. § 3582(c)(1)(A)(ii). This alternative is not at issue in this case.

protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation. *See* 18 U.S.C. § 3553(a).

I first address whether Bruno has shown "extraordinary and compelling" reasons that could warrant a sentence reduction. He advances two reasons for such relief: (1) a reduction in his sentence will allow him to access sex offender treatment sooner, and (2) the prison conditions he endured at the height of the covid pandemic were so harsh as to render his imprisonment more punitive than the Court anticipated at his initial sentencing.[26]

His arguments concerning sex offender treatment fall short. As the government points out, it is not true that a prisoner is *required* to have only three years remaining of his sentence to qualify for treatment programs.[27] Rather, program designation is "[o]rdinarily" initiated when a prisoner has 36 months to projected release.[28] These programs prioritize access based on projected release date, such that prisoners with longer sentences are often waitlisted behind those who will be released sooner.[29] This is by no means an extraordinary situation, but rather one encountered by all inmates seeking this treatment. Bruno has not alleged any reason to think that he will not have access to intensive treatment when he is closer to his release date.

In the meantime, BOP facilities offer other programs, including some he has already completed, such as classes on substance abuse, victim impact, and cognitive thinking for sex offenders.[30] That he will have to wait some years more before he can begin intensive treatment is not an extraordinary or compelling circumstance warranting a sentence reduction. *See United States v. Frias*, 2024 WL 3607804, at *3 (S.D.N.Y. 2024) ("Although a court has broad

---

[26] Doc. #96 at 5-6.
[27] *See* Federal Bureau of Prisons, "BOP Statement on Sex Offender Programs," at 16-17, available at https://www.bop.gov/policy/progstat/5324_010.pdf (last visited Nov. 25, 2024).
[28] *Id.* at 17.
[29] *Id.* at 16.
[30] Doc. #62 at 4-5.

discretion to consider what circumstances might qualify as extraordinary and compelling, 'rehabilitation *alone* shall not be considered an extraordinary and compelling reason.'") (quoting *Brooker*, 976 F.3d at 238).

Bruno's arguments concerning covid similarly fail to establish extraordinary and compelling grounds warranting a reduction. Although the pandemic itself was certainly extraordinary, case law is clear that its general effects on prison life do not, on their own, constitute compelling reasons for release. Courts have denied reduction and release motions based on lack of visitation, a reduction in programming, and the threat of infection. *See, e.g., United States v. Stevens*, 459 F. Supp. 3d 478, 486-87 (W.D.N.Y. 2020); *United States v. Padilla*, 2020 WL 3958790, at *1 (S.D.N.Y. 2020).

Bruno's "additional stress" arising from his knowledge that he was at special risk of contracting covid is also insufficient. First, his medical records indicate that BOP staff have been monitoring and successfully treating his conditions.[31] Second, he was vaccinated against covid and later contracted a mild, asymptomatic case.[32] "Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Coste*, 2022 WL 370033, at *2 (S.D.N.Y. 2022); *see United States v. Garcia*, 2022 WL 672758, at *1 (S.D.N.Y. 2022) ("Now that he has twice been diagnosed with the disease and weathered it well, it is plain that his risk factor has not put him in serious danger. Thus, a sentence reduction based on the risk of contracting COVID-19 no longer makes sense."). In short, Bruno's health conditions have been managed, and his mild covid case does not justify a sentence reduction.

---

[31] Doc. #98 at 3, 5, 11-12, 18, 22, 61, and 170.
[32] Doc. #96 at 9; Doc. #98 at 107, 108.

Even if Bruno had established extraordinary and compelling reasons for relief, the sentencing factors weigh against a sentence reduction, beginning with the nature of the crime. Bruno's sexual exploitation of children was heinous. Although Bruno has a history of battling addiction, his other characteristics and subsequent conduct cut against the relief he seeks. He has struggled to fully appreciate the gravity and harm of his crimes. For instance, he referred to the child he assaulted as a prostitute and expressed regret that he had not waited a few months until she turned 18.[33] And as late as 2020, prison staff found him in possession of pornographic materials depicting what appeared to be minor girls.[34]

Finally, a reduction in Bruno's sentence—after he received a below-guidelines term of imprisonment—would undermine the goals of sentencing, including just punishment and deterrence. A main concern is protecting the public. I am not confident that Bruno would refrain from hurting others if released at this time. Nor am I persuaded that his access to rehabilitation is so limited that it warrants a sentencing trade-off that could jeopardize young children. Bruno is free to pursue intensive treatment later in his sentence and closer to his release. In short, the purposes of sentencing would not be served if I were to reduce Bruno's sentence below 16 years of imprisonment.

## CONCLUSION

For the reasons set forth above and for substantially the reasons stated in the Government's opposition memorandum (Doc. #100), the Court DENIES defendant's motion for a sentence reduction (Doc. #96).

---

[33] Doc. #73-2 at 23; Doc. #52 at 28, 47.
[34] Doc. #72-3 at 1.

It is so ordered.

Dated at New Haven this 25th day of November 2024.

                                                        /s/ *Jeffrey Alker Meyer*
                                                       Jeffrey Alker Meyer
                                                       United States District Judge